IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

Jacori Andre' Carter, )
    Plaintiff, )
     )
v. ) 1:13cv1467 (LMB/TCB)
     )
Harold Clarke, et al., )
    Defendants. )

MEMORANDUM OPINION

Jacori Andre' Carter, a Virginia inmate proceeding pro se, has filed a civil rights action pursuant to 42 U.S.C. § 1983, alleging that James C. Parks ("Parks"), the sole defendant remaining in this civil action violated his Eighth and Fourteenth Amendment rights by allowing him to remain in administrative segregation without justification and without following proper procedure. This matter is now before the Court on Parks' Motion for Summary Judgment.

Plaintiff initially named Harold Clarke, Director of the Virginia Department of Corrections ("VDOC") and Warden Davis, warden of Sussex I State Prison ("Sussex I") as defendants. See Compl. [Dkt. No. 1]. In an amended complaint, plaintiff added Joycetine Boone, assistant warden at Sussex I; Roderic L. Tuell, 3 Bravo Segregation Unit Manager; and Parks, Director of Offender Management Services at the VDOC, as defendants. See Motion to Amend ("Mot. to Amend") [Dkt. No. 9].[1] By Order dated March 13, 2014, the Court dismissed plaintiff's claims against Clarke, Davis, Boone, and Tuell, pursuant to 28 U.S.C. § 1915A(b)(1), for failure to state a claim. See Mem. Op. & Order, March 13, 2014 [Dkt. No. 10], at 3.

Parks, the remaining defendant, was allowed sixty (60) days within which to file

---

[1] With the exception of the additional defendants, plaintiff's amended complaint is identical to his initial complaint.

dispositive motions. By Order dated May 20, 2013, the Court granted Parks an additional thirty (30) days to submit a response. Dkt. No. 17. On June 18, 2014, defendant filed an answer to plaintiff's complaint, as well as a motion for summary judgment, pursuant to Fed. R. Civ. P. 56. See Dkt. No. 19, 20. Defendant also filed a memorandum of law and affidavits to support his motion for summary judgment, as well as the Notice required by Local Civil Rule 7(K). Dkt. Nos. 21, 22. Plaintiff was given the opportunity to file responsive materials pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). On July 10, 2014, plaintiff submitted a Counter-Affidavit in response to defendant's Motion. Dkt. No. 23. For the reasons that follow, defendant's Motion for Summary Judgment will be granted, plaintiff's Motion to Deny Summary Judgment will be denied, and plaintiff's remaining outstanding motions will be denied as moot.

## I. Background

The following material facts are undisputed. Plaintiff arrived at Sussex I on March 27, 2013 from Red Onion State Prison ("Red Onion"), to be evaluated for civil commitment as a Sexually Violent Predator. Compl. at 2 ¶ 4; Memorandum in Support of Summary Judgment ("Def.'s Mem.") [Dkt. No. 21], at 2 ¶ 3. During his time at Red Onion, plaintiff had been housed in "Segregated Re-Entry." Compl. at 2 ¶ 4. Plaintiff had also participated in rehabilitation programs at Wallens Ridge State Prison ("Wallens Ridge") before being transferred to Sussex I. Id. When plaintiff arrived at Sussex I, he was classified as a temporary offender with a Level S (segregation) status. See Boone Aff. [Dkt. No. 21-1] ¶¶ 6-7; Compl. at 2 ¶ 4. As of the filing of this lawsuit, plaintiff remained in administrative segregation at Sussex I. See Compl. at 2 ¶ 4.

It is also undisputed that plaintiff has filed many administrative grievances in regards to his classification status, and has written letters to several VDOC officials concerning that status. See Compl. Ex. A-D. Parks investigated and responded to two of plaintiff's letters. See Compl. Ex.

2

A; B. On March 24, 2013, plaintiff wrote a letter to Scott Richeson, Director of Re-Entry and Programs, asserting that VDOC officials were violating procedure by keeping him in segregation. See Compl. Ex. B. The defendant replied to plaintiff's letter on April 22, 2013, informing plaintiff that the matter was closed because his concern had been addressed through an informal complaint. Id. at 1. On May 9, 2013, plaintiff wrote a similar letter to Harold Clarke. See Compl. Ex. A. The defendant also replied to this letter, stating that plaintiff's concerns had been addressed in six previous informal complaints. Id. at 2. Defendant also advised plaintiff on both occasions to "consult with [his] institutional counselor in reference to the next step in the appeal process." Id. Ex. B, at 1. It is undisputed that the defendant did not play any role in plaintiff's Institutional Classification Authority ("ICA") or disciplinary hearings. See, e.g., Boone Aff. Encl. A; C. His only involvement in the facts surrounding this lawsuit was limited to investigating and responding to two of plaintiff's letters. See Def.'s Mem, at 2 ¶ 8.

In his complaint and subsequent supporting affidavits, plaintiff asserts that, after completion of his rehabilitation programs at Wallens Ridge, he "was supposed to have been transferred back to Red Onion as a Security Level 6, . . . but [he] was transferred back to Red Onion . . . and placed in . . . . segregation." Compl. at 2 ¶ 4. Plaintiff states that he has been in administrative segregation since January of 2010. See Plaintiff's Counter-Affidavit to Defendant's Motion for Summary Judgment ("Pl.'s Resp.") [Dkt. No. 23], at #2 (7). Plaintiff also maintains that he had been "infraction free for over 17 month [sic]", when he arrived at Sussex I he was no longer eligible for confinement in administrative segregation. He further alleges that officials at Red Onion have "refused to allow [Sussex I] to do a reduction in security level," as required by VDOC policy, and that "there is no reason nor cause to keep [him] in segregation." Compl. at 2 ¶ 4, 5.

3

In contrast, defendant states that plaintiff remains in segregation at Sussex I because he has incurred twenty-one (21) disciplinary convictions since he arrived on March 27, 2013. See Boone Aff. ¶ 5. Plaintiff's "present assignment to 'S' security level is due to his continued behavior problems and disciplinary offenses." Id. at ¶ 7. The defendant also states that, contrary to plaintiff's allegations, plaintiff "has been reviewed by the Institutional Classification Authority . . . on at least [six] occasions since March of 2013." Def.'s Mem., at 5.

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The moving party bears the burden of proving that judgment on the pleadings is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden then shifts to the nonmoving party to point out the specific facts that create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Those facts which the moving party bears the burden of proving are facts which are material. "[T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."

Anderson, 477 U.S. at 248. An issue of material fact is genuine when, "the evidence . . . create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the nonmoving party. Matsushita, 475 U.S. at 587.

As stated above, the nonmoving party may not defeat a properly-supported summary judgment motion by simply substituting the "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990). Even where the nonmoving party is a pro se prisoner entitled to liberal construction of his pleadings, a "declaration under oath . . . is not enough to defeat a motion for summary judgment. [The plaintiff] has to provide a basis for his statement. To hold otherwise would render motions for summary judgment a nullity." Campbell-El v. Dist. of Columbia, 874 F.Supp. 403, 406-07 (D.D.C. 1994).

### III. Analysis

Summary judgment in favor of defendant Parks is appropriate because the pleadings, affidavits, and exhibits on file demonstrate that Parks did not have any personal involvement in the actions of which plaintiff complains. In addition, the defendant's actions did not deprive plaintiff of rights guaranteed by either the Eighth or Fourteenth Amendments.

A. Parks Was Not Personally Involved in the Decision to Keep Plaintiff in Segregation

To hold a defendant liable under § 1983, a plaintiff must show that he was deprived of rights guaranteed by the Constitution or laws of the United States, and that this deprivation resulted from conduct committed by a person acting under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988). In certain situations, defendants can be held liable as supervisors. See,

e.g., Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994); however, plaintiff has not alleged that the defendant is liable in a supervisory capacity. Therefore, to hold the defendant liable under § 1983, plaintiff must show that the defendant "acted personally in the deprivation of [his] rights." Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985) (internal quotations and citations omitted). Here, then, to hold Parks liable, plaintiff must show that Parks both knew of and was involved in the decision to keep plaintiff in administrative segregation at Sussex I.

The defendant has shown that he did not play a personal role in the decision to continue plaintiff's administrative segregation; instead, the evidence shows that defendant's only involvement in the actions giving rise to this lawsuit was his receipt and investigation of two of plaintiff's letters. See, e.g., Compl. Ex. A; B. Plaintiff has not provided any evidence to show that the defendant played any role in the day-to-day operation of Sussex I, or had any involvement in his disciplinary or ICA hearings. In addition, although "receipt of letters by prison officials may be evidence of personal knowledge of unconstitutional conditions," Collins, 766 F.2d at 850 (internal citations omitted), the defendant's evidence clearly shows that the actions of the Sussex I staff did not violate plaintiff's constitutional rights. See III.B., supra.

Plaintiff's only argument in response to the defendant's Motion for Summary Judgment is that "Parks gave 'no' real response [to plaintiff's letters] . . . ." Pl's Resp. #2 (3). Such an argument does not establish, however, that the defendant had any personal involvement in the challenged actions. Summary judgment therefore must be granted to defendant Parks.

B. Parks did not Violate Plaintiff's Constitutional Rights

Even if Parks had played a role in the decision to place plaintiff in administrative segregation, on this record there is no evidence of a constitutional violation under either the Eighth or Fourteenth Amendments.

To hold a defendant liable under the Eighth Amendment for cruel and unusual punishment due to the conditions of confinement, a plaintiff must allege facts sufficient to show (1) that he suffered an objectively serious deprivation of a basic human need, which caused serious physical or emotional injury; and (2) that the defendant was deliberately indifferent to that need. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Wilson v. Seiter, 501 U.S. 294, 198 (1991). To meet the first prong, a plaintiff must allege facts sufficient to show that the condition complained of constituted a "sufficiently serious" deprivation of a basic human need. Farmer, 511 U.S. at 834. Only extreme deprivations make out an Eighth Amendment claim, and a plaintiff has the burden of alleging facts showing that the risk from the conditions of his confinement was so grave that it violated contemporary notions of decency and resulted in serious physical or emotional injury. See Hudson v. McMillian, 503 U.S. 1, 8 (1992); Strickler v. Waters, 989 F.2d 1375, 1379-81 (4th Cir. 1993). To meet the second prong, a plaintiff must allege facts sufficient to show that the defendant knew of circumstances from which an inference could be drawn that a "substantial risk of serious harm" was posed to plaintiff's health and safety, that he drew that inference, and then disregarded the risk posed. Farmer, 511 U.S. at 837; see also Moore v. Winebrenner, 927 F.2d 1312, 1316 (4th Cir. 1991).

From the facts provided, defendant has established that there is no material dispute of fact on either prong of the Farmer test. First, the defendant has shown that plaintiff's placement in administrative segregation was a direct result of plaintiff's continued disciplinary infractions. The defendant has included reports of all of the twenty-one recent disciplinary hearings addressing plaintiff's behavior, as well as an ICA hearing report, in which the hearing officer recommended keeping plaintiff at a level "S" due to his recent disciplinary infractions. See Boone Aff. Encl. C, at 3; see also id. Encl. A (detailing disciplinary charges of disobeying a

direct order, indecent exposure, tampering with security equipment, lewd or obscene acts, intentionally flooding any area, and threatening bodily harm). These exhibits clearly show that the decision to keep plaintiff in segregation was based on plaintiff's history of disciplinary infractions, rather than on a desire to cause harm to the plaintiff. In addition, the evidence shows that, since his arrival at Sussex I on March 27, 2013, plaintiff's classification has been reviewed at least six times. See id. ¶ 6. Therefore, it is clear that the decision to keep plaintiff in administrative segregation was based on plaintiff's repeated history of disciplinary infractions, and that the decision has been reviewed multiple times. The decision to keep plaintiff in administrative segregation, given his history of disciplinary problems, did not deprive him of a basic human need, and were not undertaken with serious disregard for his health or safety.

Plaintiff provides only his own affidavit in response. He states that being confined in segregation subjects him to "confinement in an isolated cell for 23 hours a day," with no-contact visits; minimal personal property; telephone use restricted to twice a month; access to only ten dollars of non-consumable commissary; and an inability to participate in educational, rehabilitative, and religious programs. Pl's. Resp. #2 (8).[2] A plaintiff's own conclusory allegations are not enough to establish that he suffers from a deprivation of a basic human need. Plaintiff also makes a conclusory statement that the decision to hold him in administrative segregation was not made "in a good faith effort to maintain or restore discipline, but instead was used to 'maliciously and sadistically cause him harm.'" Pl.'s Resp. #2 (8). Without any factual evidence to support this statement, this allegation cannot defeat summary judgment.

Similarly, the evidence shows that plaintiff's Due Process rights have not been violated. The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving "any

---

[2] Plaintiff has made it clear, however, that he does not allege that he was actually held in solitary confinement. See Pl.'s Resp., at #2 (4).

person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. Although their constitutional protections are limited by the "exigencies of the institutional environment," inmates are entitled to basic due process protections. See Wolff v. McDonnell, 418 U.S. 539, 555-56 (1974). In general, prisoners have a liberty interest in being free from conditions that "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Connor, 515 U.S. 472, 484 (1995).

It is clear from the defendant's evidence that plaintiff has received sufficient process. The defendant has provided copies of six ICA hearing reports, from March 2013 through April 2014. See Boone Aff. Enc. C. At all of the reported hearings, the ICA hearing officer concluded that plaintiff's continued classification in administrative segregation was proper. Although plaintiff has stated that his confinement in administrative segregation subjected him to "atypical and significant hardship," he has failed to provide any evidence to support this statement. Plaintiff also complains that two of his ICA hearings were delayed, see id.; Pl.'s Resp. #2 (9), but this fact does not establish that plaintiff's Due Process rights were violated. Plaintiff has received numerous reviews of his security classification during his time at Sussex I, and the staff's failure to conduct two hearings in a timely manner has not subjected him to an "atypical and significant hardship." Rather, the defendant's evidence shows that staff have provided plaintiff with several ICA and disciplinary hearings, but that plaintiff's continued disciplinary problems have caused staff to leave his classification unchanged. As plaintiff has not challenged the procedural sufficiency of his disciplinary hearings, summary judgment is proper for defendant Parks on the Fourteenth Amendment claim.

In his response to defendant's Motion for Summary Judgment, plaintiff attempts to raise new allegations, stating that he is not attacking his current confinement in administrative

segregation, but his confinement in administrative segregation before May 21, 2013. See Pl.'s Resp. # 2 (1). Specifically, he argues that he is challenging his administrative segregation at Red Onion between January 6, 2010 and February 2, 2011; at Sussex I between February 2, 2011 and August 12, 2011; at Red Onion between August 2, 2011 and June 28, 2012; at Wallens Ridge between June 28, 2012 and November 5, 2012; and at Red Onion between November 5, 2012 and March 27, 2013. Id. Plaintiff asserts that, during these periods of time, he had no disciplinary infractions.[3] Id. It was only after he returned to Sussex I that he incurred his twenty-one new disciplinary infractions, starting on May 21, 2013. See id. at #2 (3). These new allegations have nothing to do with defendant Parks, and are therefore irrelevant to this action.[4]

## IV. Preliminary Injunction

Also pending before the Court is plaintiff's Order to Show Cause for a Preliminary Injunction [Dkt. No. 24]. Because the defendant played no personal role in the decision to maintain plaintiff in segregation and because the Court is granting summary judgment for the defendant, plaintiff's effort to obtain a preliminary injunction will be denied as moot.

## V. Conclusion

For the foregoing reasons, defendant's Motion for Summary Judgment will be granted.

---

[3] Plaintiff has not provided any evidence of this fact, other than his own statement.

[4] Plaintiff asserts that, since he filed this lawsuit, he has never challenged his current placement in administrative segregation. See id. at #2 (4). In his complaint, however, plaintiff simply listed the dates on which he was confined in various institutions, and made general allegations that his confinement was unconstitutional. See Compl. Parties #1. He has not, until now, explicitly stated that he is challenging each specific confinement at each specific institution. It thus appears that plaintiff is attempting to circumvent the very obvious fact that he has twenty-one disciplinary allegations that justify the decision to maintain him as classification as an "S" offender. At this stage of the litigation, plaintiff is not permitted to re-classify his allegations. To the extent that plaintiff wishes to challenge his administrative segregation at Red Onion and Wallens Ridge, he must file a separate lawsuit. Plaintiff is advised that venue for such a lawsuit lies in the Western District of Virginia. See 28 U.S.C. § 1391(b)(1), (2) (venue is proper in the district in which any defendant resides, or where a substantial part of the events at issue occurred).

For the foregoing reasons, defendant's Motion for Summary Judgment will be granted. An appropriate Order and Judgment shall issue.

Entered this 11th day of December 2014.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge